UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ERICK GODLEY,

                                Plaintiff,

                                                            6:16-cv-01419
v.                                                          (DNH/TWD)


ONONDAGA COUNTY, et al.,

                                Defendants.
───────────────────────────────────────────

APPEARANCES:

ERICK GODLEY
Plaintiff, *pro se*
14-B-1321
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983

civil rights action brought by *pro se* Plaintiff Erick Godley against Defendants Onondaga

County, Detective Ann Rether ("Detective Rether"), District Attorney William Fitzpatrick ("DA

Fitzpatrick"), Assistant District Attorney Michael Manfredi ("ADA Manfredi"), Attorney

Charles Keller ("Keller"), and Key Bank.  (Dkt. No. 1.)  Plaintiff, who has not paid the filing fee

for this action, has filed an application for leave to proceed *in forma pauperis* ("IFP

Application").  (Dkt. No. 8.)  For the reasons that follow, the Court grants Plaintiff's IFP

Application and recommends the *sua sponte* dismissal of the complaint without prejudice.

## I.    PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated economic need and has filed the inmate authorization form required in the Northern District to proceed with this matter *in forma pauperis*.  (Dkt. No. 9.)  Therefore, Plaintiff's IFP Application (Dkt. No. 8) is granted.

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Moreover, under 28 U.S.C. § 1915A, a court must, as soon as practicable, *sua sponte* review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam ).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    ALLEGATIONS OF THE COMPLAINT

Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges violations of his constitutional rights arising from his arrest on May 31, 2013, in Syracuse, New York, and his subsequent prosecution and conviction. (Dkt. No. 1 at ¶¶ 1, 2.) Plaintiff describes this action as "a case of actual innocence" and claims he is currently incarcerated for a crime, second-degree attempted robbery, which he did not commit. *Id.* at ¶¶ 1, 7.

As set forth in the complaint, on May 31, 2013, at approximately 8:30 a.m., Plaintiff was walking to work while counting his bus fare and lunch money, totaling eight dollars. *Id.* at ¶¶ 20-21. Two unnamed Syracuse police officers observed Plaintiff counting his money. *Id.* at 21. Plaintiff was stopped, questioned, handcuffed, and taken to the Criminal Investigations Division. *Id.* at ¶¶ 21-23. Eventually Detective Rether informed Plaintiff that "there was a robbery and the [two] witnesses say it's you." *Id.* at ¶ 26. Plaintiff declared that he "did not rob anybody." *Id.* at

¶ 27. Detective Rether replied, "we have it on video." *Id.* Thereafter, the two arresting officers walked Plaintiff across the street to the Justice Center, and informed Plaintiff he was being charged with "1st degree robbery and possession of a weapon in the 3rd." *Id.* at ¶ 31.

Plaintiff was "in jail for about a month" before he talked to an attorney. *Id.* Public Defender Attorney Lisa Coma ("Coma") eventually met with Plaintiff. *Id.* at ¶ 35. Coma advised Plaintiff he could plead guilty and accept a prison sentence of two to four years. *Id.* at ¶ 35. Although Plaintiff told Coma he was innocent and requested to view the Key Bank ATM security video, Coma advised Plaintiff to accept the plea offer because an "all-white jury" would convict him and he "could end up doing [fifteen] years[.]" *Id.*

Despite maintaining his innocence, Plaintiff agreed to accept the plea deal and appeared before Judge Brunetti[1] with Coma. *Id.* However, at the last minute, Plaintiff "could not honestly and truthfully" plead guilty. *Id.* at ¶ 36. Plaintiff wrote a letter to Judge Brunetti informing him what Coma had said and at his next court hearing, Judge Brunetti made Coma "hand over" Plaintiff's file and adjourned the hearing until Plaintiff was appointed a new attorney. *Id.* at ¶ 37.

In August 2013, Onondaga County appointed Keller to represent Plaintiff. *Id.* at ¶¶ 38, 55. Despite Plaintiff's repeated requests, Keller also failed to obtain a "clear copy" of the Key Bank ATM security video. *Id.*

Plaintiff alleges approximately eight months later, ADA Manfredi altered a copy of the Key Bank ATM security video, "making all the images distorted and a little blurry," thereby, "violating *Brady*." *Id.* at ¶ 40. Plaintiff alleges Keller "purposefully waited and colluded" with the District Attorney's Office in order to allow ADA Manfredi time to manipulate the security

---

[1] The Court notes the Honorable John J. Brunetti is a Court of Claims Judge and Acting Supreme Court Justice for Onondaga County Supreme Court.

video so that Plaintiff could be "maliciously prosecuted" for the May 31, 2013, robbery. *Id*.

Further, despite numerous requests, ADA Manfredi refused to provide Plaintiff or his family

with an original and "clear" copy of the Key Bank ATM security video. *Id*. at ¶ 43. Plaintiff

alleges "they all conspired together and just ignored/did away with this 'critical exculpatory

material evidence' and coerced and threatened [Plaintiff] with a possible [twenty-five] year

sentence[.]" *Id*. at ¶ 44.

"After ten (10) long hard months, they finally broke [Plaintiff] down" and Keller told

Plaintiff that his mother wanted him to "take what you can get and get back to your [family]."

*Id*. at ¶ 45. Plaintiff informed Keller he would plead guilty and accept the original plea offer

presented by Coma. *Id*. However, ADA Manfredi informed Keller that the original offer was no

longer available. *Id*. Instead, Plaintiff would have to accept a five-year sentence. *Id*. On the

day of his trial, Keller told Plaintiff he would probably be sentenced to twenty-five years after

the jury found him guilty. *Id*. at ¶ 47. Because Plaintiff was "afraid, confused, and more,"

Plaintiff agreed to plead guilty and accept a five-year sentence. *Id*.

Judge Brunetti, however, would not accept Plaintiff's plea. *Id*. at ¶ 48. Instead, Judge

Brunetti advised Keller and ADA Manfredi they needed to agree to the terms of the original plea

offer or Plaintiff would be sentenced to seven years, the maximum sentence on a class D felony.

*Id*. "Needless to say," ADA Manfredi would not agree to the terms of the original plea offer, and

Plaintiff "ended up receiving a seven (7) year prison sentence with five (5) years of PRS"

resulting in a "twelve (12) year sentence" even though he is "completely innocent." *Id*. at ¶ 49.[2]

---

[2] Although Plaintiff does not include the date of his conviction in his complaint, according to the
publicly available website maintained by DOCCS, Plaintiff was received into DOCCS custody
on May 1, 2014, for second-degree attempted robbery, with an aggregate maximum sentence of

Plaintiff has organized the above events into six causes of action. *Id.* at ¶¶51-57. First, Plaintiff alleges Onondaga County had a policy and/or custom to coerce and threaten innocent people, particularly minorities such as Plaintiff, in a malicious and bad faith manner to maximize DA Fitzpatrick's conviction rate for media and political reasons. *Id.* at ¶ 50. Plaintiff further alleges Onondaga County, through the District Attorney's Office violated his rights to "be free of malicious prosecution" and violated *Brady v. Maryland*, 373 U.S. 80 (1963), by suppressing evidence favorable to an accused. *Id.* at ¶ 51.

Second, Plaintiff alleges Detective Rether violated his rights to be free of malicious prosecution because she "initiated and continued a malicious prosecution against Plaintiff. *Id.* at ¶ 52. She also kept Plaintiff handcuffed for several hours even though Plaintiff proclaimed his innocence, thereby violating his rights under the Eighth and Fourteenth Amendments to be free of cruel and unusual punishment. *Id.* Plaintiff claims he was denied due process of law because Detective Rether refused to call Plaintiff's parole officer, despite Plaintiff's repeated requests and her personal knowledge that Plaintiff was under his parole officer's supervision. *Id.*

Third, Plaintiff alleges DA Fitzpatrick violated his rights to be free of malicious prosecution, cruel and unusual punishment, and violations of due process because he is the supervisor of all Assistant District Attorneys, including ADA Manfredi, and was thus "personally involved" in the constitutional violations. *Id.* at ¶ 53.

Fourth, Plaintiff alleges ADA Manfredi violated Plaintiff's rights to be free of malicious prosecution because ADA Manfredi purposely suppressed and manipulated the original Key Bank ATM security video and pressured an innocent man to take a plea deal. *Id.* at ¶ 54.

---

seven years, with an earliest conditional release date of May 24, 2019. *See* http://nysdoccslookup.doccs.ny.gov (last visited January 5, 2017).

Plaintiff further alleges that as a result of ADA Manfredi's malicious prosecution, Plaintiff's sentence constitutes cruel and unusual punishment because he is actually innocent. *Id.*

Fifth, Plaintiff alleges Keller, while "appearing" to represent Plaintiff from about August 2013 to April 2014, was "simultaneously conspiring" with DA Fitzpatrick and ADA Manfredi. *Id.* at ¶ 55. In addition, Plaintiff claims Keller engaged in collusion and deceit, gave very bad advice, ignored Plaintiff's repeated requests to obtain clear color copies of the Key Bank ATM security video, outright lied to Plaintiff, coerced and threatened Plaintiff to plead guilty, and ignored Plaintiff's requests at sentencing in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the New York State Constitution, and New York Judiciary Laws. *Id.*

Lastly, Plaintiff alleges despite repeated attempts to Key Bank for a "clear color copy" of the May 31, 2013, ATM security video, "they" will not help, and "it's just not right" because Plaintiff needs a copy of the video to "prove [his] actual innocence." *Id.* at ¶ 57.

As relief, Plaintiff requests an immediate Order directing Key Bank, DA Fitzpatrick, and ADA Manfredi to provide Plaintiff and his mother with clear, color copies of the ATM security video, along with all security videos taken on May 31, 2013. *Id.* at ¶ 58. Plaintiff also seeks compensatory and punitive damages from Onondaga County, Detective Rether, DA Fitzpatrick, ADA Manfredi, and Keller in the amount of $32,290,000. *Id.* Plaintiff has submitted sixteen pages of exhibits in support of his complaint. (Dkt. No. 1-1.)

## IV.    ANALYSIS

Plaintiff commenced this action for "deliberate and continuous violations of his rights pursuant to 42 U.S.C. §1983 for conspiracy, malicious prosecution, ineffective assistance of counsel, and wrongful confinement[.]"  (Dkt. No. 1 at ¶ 2.)  Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff "must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Section 1983 does not in and of itself create any substantive rights; rather the plaintiff must demonstrate a violation of an independent federal constitutional or statutory right.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

### A.    *Heck v. Humphrey*

Plaintiff's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477, (1994).  In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages

> bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. at 486-87 (emphasis in original); *see also Peterson v. Todd*, No. 5:12-CV-1371 (MAD/DEP), 2013 WL 2487253, at *4 (N.D.N.Y. June 7, 2013[3]) ("A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983.") (citation and internal quotation marks omitted).

Plaintiff's various claims regarding his false arrest, false imprisonment, malicious prosecution, conspiracy, violations of *Brady*, ineffective assistance of defense counsel, and sentencing represent challenges that fall squarely within the ambit of *Heck*. Were Plaintiff to succeed on any theory espoused by him, he would necessarily call into question the validity of the conviction he is challenging in this action. *See, e.g.*, *Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned); *Clemmons v. Albany Cnty. District Attorney's Office*, No. 1:16-CV-884 (TJM/CFH), 2016 WL 5793201, at *3 (N.D.N.Y. Aug. 25, 2016) (dismissing *Brady* claims on initial review as barred by *Heck*); *Peterson*, 2013 WL 2487253 (dismissing § 1983 claims of fraud and malicious prosecution against district attorney as barred by *Heck* where the plaintiff's continued incarceration suggested the inmate's conviction had not been overturned); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding the plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck* ).

---

[3] Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Moreover, the fact that Plaintiff is seeking injunctive relief, as well as monetary relief, does not require a different finding. *See Clemmons*, 2016 WL 5793201, at *3 (citing *Loyd v. Cuomo*, No. 8:14-cv-829 (GLS/CFH), 2015 WL 3637409, at *2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the *Heck* rule applies 'no matter the relief sought (damages or equitable relief).'") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and citing *Caswell v. Green*, 424 F. App'x 44, 45 (2d Cir. 2011))).

Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated.[4]

In light of the above, the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*.[5]

## B.   Opportunity to Amend

Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, for the reasons set forth above, leave to amend would be futile due to the bar imposed by *Heck*. "Disposition of the case on *Heck* grounds, however, warrants only dismissal *without* prejudice, because the suit may be reinstated should [the] plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

---

[4]  A habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to seek relief from illegal confinement. *See Ingram v. Herrick*, 475 F. App'x 793, 794 (2d Cir. 2012) (citing *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007)).

[5]  Because the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*, no determination has been made as to the merits of Plaintiff's claims.

question by a federal court's issuance of a writ of habeas corpus.'" *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (emphasis in original) (quoting *Heck*, 512 U.S. at 487).  Accordingly, the Court recommends dismissing Plaintiff's § 1983 claims without prejudice.

### C.     Claims Under the New York State Constitution and Laws

Inasmuch as the Court is recommending that Plaintiff's federal claims be dismissed, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claims without prejudice.  *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**WHEREBY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDCE** as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**RECOMMENDED** that the District Court decline to exercise supplement jurisdiction over Plaintiff's state law claims; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 6, 2017
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2013 WL 2487253
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Carlos PETERSON, Plaintiff,
v.
Judge Donald E. TODD, and D.A.
William Fitzpatrick, Defendants.

No. 5:12–CV–1371 (MAD/DEP).
|
June 7, 2013.

### Attorneys and Law Firms

Carlos Peterson, Dannemora, NY, pro se.

### MEMORANDUM–DECISION AND ORDER

MAE A. D'AGOSTINO, District Judge.

### I. INTRODUCTION

**\*1** Plaintiff has brought a civil rights action pursuant
to 42 U.S.C. § 1983 against Defendants Todd and
Fitzpatrick, the judge and district attorney, respectively,
who presided and prosecuted over his criminal
proceedings. Having reviewed the parties submissions,
the Court finds that Plaintiff's case must be dismissed
with prejudice because his conviction has not been
independently vacated, or, alternatively, because both
Defendants are entitled to absolute immunity.

### II. BACKGROUND

### A. Plaintiff's Complaint

In a civil rights complaint dated September 7, 2012,
Plaintiff *pro se* alleges that Defendants committed
malicious prosecution and fraud. *See* Dkt. No. 1 at ¶
7. Plaintiff does so while he remains confined in the
Clinton Correction Facility, located in Dannemora, New
York. *See* Dkt. No. 1 at ¶ 2. Specifically, Plaintiff
alleges that Defendants did the following: (1) permitted
the introduction of false testimony in order to deny
motions to vacate his conviction; (2) made material,

discriminatory misstatements of the law; and (3) failed
to disclose potential exculpatory evidence. *See id.* at 4.
Plaintiff requests actual and punitive damages in the sum
of $15,000,000.

In a Report, Recommendation and Order dated February
7, 2013, Magistrate Judge Peebles recommended that the
Court dismiss with prejudice Plaintiff's claims against both
Defendant Fitzpatrick and Defendant Todd pursuant to
*Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129
L.Ed.2d 383 (1994), or, alternatively, on the basis of
prosecutorial and judicial immunity, respectively. *See* Dkt
No. 7 at 9–15.

### B. Plaintiff's Objection to Magistrate Judge
### Peebles' Report, Recommendation and Order

Plaintiff objects to Magistrate Judge Peebles' Order and
Report–Recommendation. Firstly, Plaintiff claims that
his original complaint against Defendant Todd had
nothing to do with his criminal trial, which he says was
presided over by Judge William D. Walsh, not Defendant
Todd. *See* Dkt. No. 8 at 1. The fraud claims against
Defendant Todd are apparently derived from Plaintiff's
"at least 7 or 8440.10 motions in the hands of [J]udge
Donald E. Todd and the D.A. office." *See id.* at 2.
Plaintiff, therefore, objects to Magistrate Judge Peebles'
reliance on *Heck* in his Report, Recommendation and
Order.

Secondly, Plaintiff objects to Magistrate Judge Peebles'
reliance on absolute immunity in his Order and Report–
Recommendation. According to Plaintiff's objection,
"[t]he [i]mmunity type of shield doesn't [i]mmune
corrupt." *See id.*

### III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate
judge's report-recommendation, the district court makes
a *"de novo* determination of those portions of the
report or specified proposed findings or recommendations
to which objection is made." 28 U.S.C. § 636(b)(1).
However, when a party files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [that he presented] to the magistrate judge,"
the court reviews those recommendations for clear error.

*O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

**\*2** A court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune to such relief." 28 U.S.C. § 1915A(b). This ability to dismiss a complaint *sua sponte* exists even in cases in which a prisoner has attempted to file his or her complaint *in forma pauperis.* *See Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). It should be noted that "extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond[.]" *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983).

A court should not dismiss a plaintiff's complaint if it states "enough facts to state a claim to relief that is plausible on its face." *Bell v. Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court should accept all of a complaint's factual allegations as true, but the court is not bound to accept the complaint's legal conclusions. *See id.* (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a) (2)).

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus,* 551 U.S. 89, 127, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). As such, *Twombly* and *Iqbal*

notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.,* 287 F.3d 138, 146 (2d Cir.2002).

## B. Relief under 42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected" the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

## C. Absolute Immunity

**\*3** Plaintiff's first objection, clarifying that his initial complaint was made about the proceedings surrounding his motion to vacate his conviction, rather than the conviction itself, is immaterial. Such an objection does not change the fact that Plaintiff is challenging his underlying conviction, which is the only fact Magistrate Judge Peebles needed to rely on when applying his absolute immunity analysis in his Order and Report–Recommendation. Plaintiff's objections to Magistrate Judge Peebles' reliance on Defendants' absolute immunity are not factual objections, but instead legal conclusions that absolute immunity does not apply in his case. These objections are without merit.

### *1. Judicial Immunity as Applied to Defendant Todd*
Defendant Todd is a sitting Oswego County Court Judge who denied Plaintiff's C.P.L. § 440.10 motions to vacate his conviction. *See* Dkt. No. 1 at ¶ 3.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 further barred injunctive relief and provided that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996); *see also Montero v. Travis,* 171 F.3d 757 (2d Cir.1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." *Bobrowsky v. Yonkers Courthouse,* 777 F.Supp.2d 692, 711 (S.D.N.Y.2011) (citing *Mireles,* 502 U.S. at 11, 112 S.Ct. 286, 116 L.Ed.2d 9).

In determining whether or not the judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.' " *Bliven,* 579 F.3d at 209 (quoting *Maestri v. Jutkofsky,* 860 F.2d 50, 52 (2d Cir.1988)). "Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' " *Ceparano v. Southampton Justice Court,* 404 Fed. Appx. 537, 539 (2d Cir.2011) (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." ' " *Ceparano,* 404 Fed. Appx. at 539 (quotation omitted). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " *Bliven,* 579 F.3d at 209 (quotation and other citation omitted). While absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under § 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable. *See Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (quotation omitted).

**\*4** In the present matter, Plaintiff's complaint alleges that Defendant Todd committed fraud while presiding as a judge over Plaintiff's motions to vacate his sentence. It is specifically because Defendant Todd performed these actions in his judicial capacity that Plaintiff has filed his complaint. Plaintiff has failed to allege that Defendant Todd was acting in the complete absence of jurisdiction or beyond his judicial capacity, nor could he. As such, the Court finds that Magistrate Judge Peebles correctly applied the absolute immunity standard to Plaintiff's claims against Defendant Todd.

### 2. Prosecutorial Immunity as Applied to Defendant Fitzpatrick

A prosecutor is entitled to absolute immunity for "performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993) (citations and quotation marks omitted).

Since determining whether a prosecutor's conduct is properly categorized as prosecutorial, investigative, or administrative "may present [a] difficult question[ ]," *Imbler,* 424 U.S. at 431 n. 33, the Supreme Court has adopted a "functional approach" that looks at "the nature of the function performed," not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1987). "The Second Circuit views the pre-litigation function that a prosecutor performs as having at least two aspects: '(1) the supervision and interaction of law enforcement agencies in acquiring evidence which might be used in a prosecution, and (2) the organization, evaluation, and marshalling of the evidence into a form that will enable the prosecutor to try a case, seek a warrant, indictment, or order.' " *Ying*

2013 WL 2487253

*Jing Gan,* 996 F.2d at 528 (quoting *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987)) (emphasis removed).

"[T]he first category consists of actions that are of a police nature and are not entitled to absolute protection." *Barbera,* 836 F.2d at 100; *see also Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (holding that "advising the police in the investigative phase of a criminal case is [not] so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity") (quotation marks and citation omitted). Generally, "[b]efore any legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts." *Hill,* 45 F.3d at 661 (citing *Barbera,* 836 F.2d at 100).

**\*5** The complaint against Defendant Fitzpatrick centers on Plaintiff's unsuccessful attempts to have his conviction vacated. These events are squarely within the judicial process, thereby entitling Defendant Fitzpatrick to absolute immunity from suit. In his objections to Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff argues that he submitted seven or eight motions to vacate and, despite the fact that the evidence showed that "the State of New York doesn't have a legit case," the motions were nevertheless denied. *See* Dkt. No. 8 at 2. Plaintiff's complaint and objections clearly deal with Defendant Fitzpatrick's decision to prosecute his case, the decision to oppose the motion to vacate his conviction, and Defendant Fitzpatrick's ultimate success in opposing the motion to vacate his conviction.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should dismiss the claims against Defendant Fitzpatrick because of absolute prosecutorial immunity.

### D. *Heck v. Humphrey*

Unlike Plaintiff's objection that it would be immoral for the doctrine of absolute immunity to be applied in his situation, his objection to Magistrate Judge Peebles' *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), analysis alleges facts that, on their face, were not explicitly discussed in Magistrate Judge Peebles' Order and Report–Recommendation. But, despite Plaintiff's insistence that his complaint has nothing to do with the judge who presided over his trial, Judge William D. Walsh, his goal in this matter is to compel a successful N.Y.Crim.

Proc. § 440.10 motion to vacate his sentence. *See* Dkt. No. 8; Dkt. No. 1 at ¶ 6; *see also* N.Y.Crim. Proc. Law § 440.10 (Consol.2013). Plaintiff's claim must fail regardless of Defendant's identity because of the outcome which Plaintiff seeks.

In *Heck,* the Supreme Court held that,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486–87; *see also Tavarez v. Reno,* 54 F.3d 109 (2d Cir.1995) (per curiam), ("*Heck* dictates that a cause of action seeking damages under § 1983 for an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated" (quoting *Stephenson v. Reno,* 28 F.3d 26, 27 (5th Cir.1994)) (internal quotation marks omitted). One of the Supreme Court's primary concerns in *Heck* was preventing opportunities that "would permit ... a collateral attack on [plaintiff's] conviction through the vehicle of a civil suit." *Heck,* 512 U.S. at 484 (citation omitted) (internal quotation marks omitted). The plaintiff in *Heck,* as in the present matter, requested only damages and not release from prison. *See* Dkt. No. 1 at ¶ 8; *see also Heck,* 512 U.S. at 479. Yet the Supreme Court made explicit that its holding applied even to prisoners seeking only damages without seeking any injunctive relief. *See Heck,* 512 U.S. at 482.

**\*6** Plaintiff's complaint alleges fraud and malicious prosecution by Defendants and does so in an attempt to demonstrate that his motions to vacate his criminal sentence have been unfairly denied. *See* Dkt. No. 1 at ¶ 6. Under *Heck,* it does not matter that Plaintiff's motions to vacate his sentence have one degree of separation from the events of his original criminal trial before Judge William

D. Walsh. Even though Plaintiff has filed his complaint against Defendant Todd, if he succeeds on his complaint, his conviction would be rendered invalid. This cannot be allowed unless Plaintiff's conviction has been vacated on some independent basis. Plaintiff does not allege any such independent basis in his complaint, *see* Dkt. No. 1 at ¶ 6, and as Magistrate Judge Peebles points out, his continued incarceration suggests no such independent basis has yet been found. *See* Dkt. No. 7 at 10. [1]

[1] The Court has corroborated Magistrate Judge Peebles' search, *see* Dkt No. 7 at 2 n. 1, and confirmed that Plaintiff is still, in fact, incarcerated at Clinton Correctional Facility as of May 29, 2013, with a release date of no earlier than November 24, 2016. *See* Inmate Information, Inmate Population Information Search http://nysdoccslookup.doccs.ny.gov/ (last visited May 29, 2013).

Based on the foregoing, the Court finds that Magistrate Judge Peebles' correctly determined that *Heck v. Humphrey* precludes Plaintiff's claims.

### E. Whether to Permit Amendment

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted).

Although a Court should generally grant a plaintiff proceeding *pro se* at least one opportunity to amend when dismissing a complaint for failure to state a claim, no such opportunity is required when it is clear that such an amendment would be futile, as is the case in the present matter. Since the underlying events of Plaintiff's motion to vacate his conviction are inextricably linked to a criminal conviction that has not been independently vacated, there is no set of facts by which *Heck v. Humphrey* would not bar Plaintiff's claim. Further, there is no set of facts Plaintiff might plead that would avoid the bar of absolute immunity.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should not grant Plaintiff leave to amend his complaint, since any amendment would be futile.

### IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report, Recommendation and Order is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that all claims against Defendants Todd and Fitzpatrick are **DISMISSED with prejudice,** pursuant to 28 U.S.C. § 1915(e)(B)(iii) and 28 U.S.C. § 1915A(b)(2); and the Court further

**\*7 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Memorandum–Decision and Order would not be taken in good faith; and, therefore, *in forma pauperis* status for purposes of appeal is **DENIED;** [2] and the Court further

[2] *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

*REPORT, RECOMMENDATION, and ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

Currently pending before me for review are a civil rights complaint and accompanying *in forma pauperis* ("IFP") application, both of which have been submitted for filing by *pro se* plaintiff Carlos Peterson. In his complaint,

2013 WL 2487253

plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against a sitting judge and a county district attorney, arising out of the criminal conviction that led to his current incarceration.

For the reasons set forth below, plaintiff's application for IFP status is denied, and I recommend that his complaint be dismissed in its entirety based on the fact that the asserted claims are precluded under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and, alternatively, the defendants' entitlement to absolute immunity.

## I. *BACKGROUND*

Plaintiff is a New York State prison inmate currently confined in the Clinton Correctional Facility, located in Dannemora, New York. Complaint (Dkt. No. 1) at ¶ 2.[1] Generally speaking, plaintiff's complaint alleges that he was wrongfully convicted because defendants Judge Donald E. Todd and Onondaga County District Attorney William J. Fitzpatrick (1) permitted the introduction of false testimony and inadmissible evidence at trial; (2) made material misstatements of law in a discriminatory manner; and (3) failed to disclose potentially exculpatory evidence to him. *Id.* at ¶ 6. Additionally, plaintiff's complaint alleges that he was disparately treated, and that his conviction was improperly motivated. *Id.* As a result, plaintiff's complaint asserts claims of malicious prosecution and fraud against both defendants Todd and Fitzpatrick. *Id.* at ¶ 7. As relief, plaintiff seeks recovery of actual and punitive damages totalling $15 million. *Id.* at ¶ 8.

[1] Although plaintiff's IFP application states that he is not incarcerated, New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Information informs the court that plaintiff incarcerated at Clinton Correctional Facility as of February 4, 2013, with a release date of no earlier than November 24, 2016. Inmate Information, Inmate Population Information Search http://nysdoccslookup.doccs.ny.gov/ (last visited Feb. 4, 2013).

## II. *DISCUSSION*

### A. *Plaintiff's IFP Application*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $350, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee.[2] 28 U.S.C. § 1915(a)(1).

[2] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of New York,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

When a prison inmate requests IFP status, his application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In accordance with the local rules of practice of this court, a prisoner may satisfy this requirement by submitting a completed, signed, and certified IFP application.[3] N.D.N.Y. L.R. 5.4(b)(1)(A). Local Rule 5.4 further provides that, if the prisoner fails to fully comply with the above-described requirements after being informed by court order of what is required, "the Court shall dismiss the action." N.D.N.Y. L.R. 5.4(b)(2)(A).[4]

[3] A "certified" IFP application is one on which the certificate portion at the bottom of page two of the form IFP application has been completed and signed by an appropriate official at the plaintiff's prison facility. *See, e.g.,* Dkt. No. 2 at 2. The certificate portion of the IFP application requests information regarding funds and/or securities held on account to the inmate's credit over the preceding six months. *Id.*

[4] It should be noted that Rule 41(b) of the Federal Rules of Civil Procedure permits a court, in its discretion, to dismiss an action based upon the failure of a plaintiff "to comply with these rules or a court order." Fed.R.Civ.P. 41(b). It is well-settled that the term "these rules" in Fed.R.Civ.P. 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for this court. *Tylicki v.*

*Ryan,* 244 F.R.D. 146, 147 (N.D.N.Y.2006) (Kahn, J.).

**\*8** In this instance, plaintiff has submitted an IFP application that does not include the required trust account certification. Dkt. No. 2 at 2. Accordingly, plaintiff's IFP application is denied as incomplete. *See, e.g., Resto v. Weissmane,* No. 08–CV–0340, 2008 WL 4021053, at \*3 (N.D.N.Y. Aug. 25, 2008) (Kahn, J., adopting on de novo review report and recommendation by Lowe, M.J.) (denying motion to proceed IFP in part on plaintiff's failure to complete certificate portion of form affidavit), *accord, Ramos v. Doe,* No. 97–CV–1074, 1997 WL 627549, at \*3 (N.D.N.Y. Oct. 9, 1997) (Pooler, J.).[5], [6]

[5]     Copies of all unreported decisions have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

[6]     In the event that this action is not dismissed, I recommend that the plaintiff be required, within thirty days of the date of filing of a decision and order permitting the action to proceed, to either (1) pay the required court filing fee of $350, or (2) submit a completed and certified IFP application. Upon the failure of plaintiff to comply with these orders, I will recommend that his complaint be dismissed without prejudice.

### B. *Sufficiency of Plaintiff's Complaint*

#### 1. *Standard of Review*

Ordinarily, the denial of plaintiff's IFP application would end the court's discussion, and plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. However, 28 U.S.C. § 1915 makes clear that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). *See also Nelson v. Spitzer,* No. 07–CV–1241, 2008 WL 268215, at \*1–2 (N.D.N.Y. Jan. 29, 2008) (McAvoy, J.) (denying motion to proceed IFP based on three-strikes rule, then analyzing complaint and dismissing it, pursuant to 28 U.S.C. § 1915(e), for

failure to state a claim). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis."* ).[7] When applying these standards of review, in light of the leniency afforded to *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990), a court should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond[.]" *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted).

[7]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson,* 2008 WL 268215, at \*1 n. 3, and "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources," *Neitzke,* 490 U.S. at 327.

When reviewing a complaint under 28 U.S.C. § 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.' " *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)) (italics omitted).

**\*9** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Here, plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. *See also Myers v. Wollowitz,* No. 95–CV–0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) ("[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

### 2. Heck v. Humphrey

Plaintiff's malicious prosecution and fraud claims arise from alleged constitutional violations that occurred in connection with his criminal conviction. Complaint (Dkt. No. 1) at ¶ 6. In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

> reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486–87; *see also Estes v. Doe,* No. 97–CV–8133, 1999 WL 983886, at *3 (S.D.N.Y. Oct.29, 1999) (quoting *Heck* ). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983." *Estes,* 1999 WL 983886, at *3.

Here, because plaintiff's complaint does not allege that he has successfully invalidated the conviction he seeks to challenge, and the fact of plaintiff's current incarceration suggests his conviction has not, in fact, been invalidated, his claims in this action are precluded. For this reason, I recommend that plaintiff's complaint be dismissed.

### 3. Absolute Immunity

**\*10** Plaintiff's complaint asserts claims against defendant Todd, a sitting Oswego County Court Judge, and defendant Fitzpatrick, the Onondaga County District Attorney, for conduct undertaken in furtherance of their official roles. Complaint (Dkt. No. 1) at ¶ 3. Both, however, are entitled to absolute immunity, warranting dismissal of plaintiff's claims against them on this alternative basis.

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citing *Mireles v. Waco,* 502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)); *see also Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young,* 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin,* 320 F.Supp.2d at 41.

It is equally well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quoting *Imbler v. Pachtman,* 424 U.S.

409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Hill*, 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)); *see also Bernard v. County of Suffolk,* 356 F.3d 495, 504 (2d Cir.2004) ("The appropriate inquiry ... is not whether authorized acts are performed with a good or bad *motive,* but whether the *acts* at issue are beyond the prosecutor's authority."); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (finding that prosecutorial immunity protects prosecutors from liability under section 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

Applying these well-established principles to this case, it is clear that plaintiff's claims against defendants Todd and Fitzpatrick are subject to dismissal. The claims against both stem from plaintiff's criminal trial, during which, his complaint alleges, both defendants were complicit in the presentation of false testimony and inadmissible evidence, and made material misstatements of the law. Complaint (Dkt. No. 1) at ¶ 6. The complaint also alleges that the defendants failed to disclose potentially favorable evidence to the plaintiff. *Id.* Because these acts were conducted in furtherance of defendant Todd's judicial duties, and defendant Fitzpatrick's prosecutorial duties during the judicial phase of the criminal proceeding against plaintiff, both defendants are protected from suit by absolute immunity. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ( "The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his official capacity."); *Hill,* 45 F.3d at 661–62 ("As to [the prosecutor]'s failure to turn over [exculpatory] material, ... this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); *Barrett v. U.S.,* 798 F.2d 565, 571–72 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation[.]"); *Sheikh v. Foxman,* No. 12–CV–0442, 2012 1166439, at *1–2 (M.D.Fla. Mar. 26, 2012) (finding that "the allegedly

wrongful acts by [the defendant-judge]," including his "refusal to admit certain evidence[,] ... were judicial acts within his authority as the presiding judge"); *Mesmer v. St. Mary's Cnty.,* No. 10–CV–1053, 2010 WL 1881772, at *2 (D.Md. May 7, 2010) ("Indeed, a decision about admission or exclusion of evidence is precisely the kind of decision a judge routinely makes during the course of judicial proceedings.").

## C. *Whether to Permit Amendment*

**\*11** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.").

In this instance, the deficiencies identified above are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, I conclude that any amendment that could be offered by the plaintiff would be futile, and therefore recommend against granting him leave to amend.

### III. *SUMMARY AND RECOMMENDATION*

Plaintiff's claims in this action, asserted against the sitting judge who presided over his criminal trial, and the district attorney who prosecuted the case against him, are precluded under *Heck v. Humphrey,* based upon plaintiff's failure to allege that his conviction has been invalidated, and additionally because both defendants are entitled to absolute immunity. It is therefore hereby

ORDERED, that plaintiff's *in forma pauperis* application (Dkt. No. 2), is DENIED, as incomplete; and it is further respectfully

RECOMMENDED, that plaintiff's claims against defendants Todd and Fitzpatrick be DISMISSED, without leave to replead, pursuant to 28 U .S.C. § 1915(e) (B)(iii) and 28 U.S.C. § 1915A(b)(2), and that the clerk be directed to enter judgment and close the action; and it is further

ORDERED, that the clerk of the court serve a copy of this report and recommendation on plaintiff, by regular mail; and it is further

**\*12** RECOMMENDED that the District Judge certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the court's decision and order adopting this recommendation would not be taken in good faith, and therefore DENY any IFP application for purposes of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2487253

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 5793201
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Andre L. Clemmons, Plaintiff,

v.

Albany County District Attorney's
Office, et al., Defendants.

1:16-CV-884 (TJM/CFH)
|
Signed 08/25/2016

**Attorneys and Law Firms**

ANDRE L. CLEMMONS, 03-A-5959, Sullivan Correctional Facility, Box 116, OF COUNSEL: Fallsburg, New York 12733, pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint brought by pro se plaintiff Andre L. Clemmons, purportedly pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."). Plaintiff has not paid the filing fee in this action, and instead seeks permission to proceed with this matter in forma pauperis ("IFP"). Dkt. No. 2.

**I. IFP**

Turning to plaintiff's IFP application, after reviewing the information provided therein, the Court finds that plaintiff may properly proceed with this matter IFP. Dkt. No. 2. [1]

---

[1]    Plaintiff should note that although his in Forma Pauperis Application has been granted, Plaintiff ill still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**II. Initial Review** [2]

[2]    Any unpublished decisions cited to herein are provided to plaintiff with his copy of the Report-Recommendation and Order.

**A. Legal Standard**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

**B. Complaint**

Liberally read, plaintiff seeks to sue (1) the Albany County District Attorney's Office ("DA"), (2) Assistant District Attorney ("ADA") Steven M. Sharp; (3) Assistant Attorney General ("AAG") Tracy Steeves; and (4) Assistant Attorney General ("AAG") Barry Kaufman. Compl. at 1-2. Plaintiff alleges that the DA's Office

> was deliberate [sic] indifference in failure to train or supervise its employees in fulfilling their Brady-Rosario obligation; and also, failing to train its employees not to commit or use perjurious information to secure a defendants [sic] conviction; which result [sic] that assistant district attorneys suppressed evidence impeaching its principal witness-evidence against plaintiff, which denied plaintiff his due process and constitutional rights and proximately caused his wrongful conviction.

Id. at 2. Plaintiff further argues that the DA's Office also failed to discipline, sanction or fired [sic] its employees whom [sic] was guilty of these same violations in the past." Id. Finally, plaintiff argues that the DA's Office

had engaged in fraud, deceit and trickery in that, in order to secure a seal order from a [sic] Albany County Supreme Court Judge, the District Attorney [sic] Office intentionally presented all the cell phone records and other Brady – Rosario material utilized against the plaintiff at his trial, as if these records and other materials was [sic] protected medical records, therefore, the Court should order these documents sealed, to which, the Court did. This doing by the District Attorney [sic] Office was not only fraud upon the Court, but was clearly in violation of the plaintiff's Due Process and Constitutional Rights to access to Brady-Rosario materials used partially against him at his trial under the 8 $^{th}$ and 14 $^{th}$ amendment.

**\*2**  Id. at 2-3.

As to his claims against ADA Sharp, plaintiff contends that Sharp improperly denied plaintiff access to unredacted cell phone records and Grand Jury Minutes relating to indictment number 2-7366, which was handed down on March 1, 2002. Compl. at 3-5. Plaintiff argues that ADA Sharp's withholding of the records and minutes "seriously prejudice [sic] the plaintiff and violated his Due Process and Constitutional Rights under the 8 $^{th}$ and 14 $^{th}$ Amendment." Id. at 4.

Plaintiff contends that AAG Steeves improperly objected to his June 2013 Order to Show Cause filed in Sullivan County Supreme Court which requested that certain records and documents related to his underlying criminal trial be unsealed. Compl. at 5. Plaintiff contends that Steeves' denial of such records "clearly violated plaintiff's Due Process and Constitutional Rights under the 8 $^{th}$ and 14 $^{th}$ Amendment [sic], in result, prejudice [sic] the plaintiff and denied him access to the Court." Id.

Plaintiff provides that AAG Kaufman opposed plaintiff's December 2013 "motion to Renew and Reargue and to Vacate the order denying and dismissing plaintiff's prior

Article-78 Petition." Compl. at 6. Plaintiff contends that AAG Kaufman's "opposing and denying the plaintiff access to these important records and documents, clearly violated the plaintiff's Due Process and Constitutional Rights under the 8 $^{th}$ and 14 $^{th}$ Amendment [sic], in denying the plaintiff actual access to the Courts." Id.

Plaintiff requests that the following relief:

(1) "That the Supreme Court's Judgment denying plaintiff's CPL § 440.10 Motion be reopened and an evidentiary hearing ordered to determine the facts herein.

(2) A declaratory judgment that plaintiff is entitled to access to the following documentary evidence:

a. A redacted copy of plaintiff's Grand Jury Minutes under Indictment # 2-7366 limiting disclosure to all testimony linking plaintiff to the crime.

b. All unredacted cellular phone records included but not limited to witness Ms. Kayla Autry and the plaintiff's.

c. That the order by the Albany Supreme Court Judge to sealed [sic] said requested records and or evidence be lifted-unsealed, and that all requested records and documents be turned over to

d. A preliminary and permanent injunction requiring all of the defendants to produce all the foregoing evidence-documents to the plaintiff.

Compl. at 7.

### C. Initial Review

Liberally construing plaintiff's complaint, it appears that he is alleging constitutional violations in connection with (1) his underlying conviction insofar as he contends that certain Brady/Rosario materials were improperly withheld; as well as (2) evidentiary rulings in various state court proceedings in Sullivan County Supreme Court and Albany County Supreme Court, and in his underlying motion pursuant to New York Criminal Procedure Law § 440.10. See Compl. $^{3}$ Plaintiff contends that the denial of Brady and/or Rosario material violated his right of access to the courts, his Fourteenth Amendment right to

due process, and amounted to violations of the Eighth Amendment.[4]

[3]  Although it would seem that these rulings would ultimately be determined by the Court, plaintiff names as defendants the various ADAs and AAGs. See Compl.

[4]  Plaintiff's complaint fails to explain how the alleged Brady or Rosario violations violated his Eighth Amendment right to be free from cruel and unusual punishment. See Compl.

**\*3** An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983; see also German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) ("Section 1983 establishes a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.") (quotations omitted).[5]

[5]  Plaintiff's writ for habeas corpus relief was denied by this Court in October 2011 relating to this underlying conviction. Clemmons v. Artus, 9:09-CV-213 (GTS).

The Supreme Court in Heck v. Humphry has directed

> when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has been evaluated.

Jenkins v. Haubert, 179 F.3d 19, 23 (2d Cir. 1999). The fact that plaintiff is seeking injunctive and declaratory, rather than monetary relief, does not require a different finding. Loyd v. Cuomo, 8:14-CV-829 (GLS/CFH), 2015 W L 3637409, at \*2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the Heck rule applies 'no matter the relief sought (damages or equitable relief).' ") (quoting Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) and citing Caswell v. Green, 424 Fed.Appx. 44, 45 (2d Cir. 2011)).

Here, although plaintiff couches these claims in the terms of failure to train and denial of due process and access to the courts, his underlying claims indicate that the DA/ADAs' alleged failures to provide these materials impacted his underlying conviction. The Second Circuit in Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999) rejected a similar argument to plaintiff's. There, the plaintiff argued that Heck did not bar his claim that "his right to meaningful court access has been denied by the withholding of exculpatory evidence." Id. The Second Circuit noted that "this claim sounds under Brady v. Maryland ... and therefore does indeed call into question the validity of his conviction. Accordingly, it is barred by Heck." Id. The Second Circuit has pointed out that the "Supreme Court ... recently established that 'Brady is the wrong framework' to apply in assessing a convicted defendant's right to access exculpatory evidence." Seri v. Bochicchio, 374 Fed.Appx. 114, 117 (2d Cir. 2010) (quoting Dist. Attorney's Office for the Third Judicial Dist. v. Osburne, ___ U.S. ____, 129 S.Ct. 2308 (2009)). Accordingly, the undersigned finds this case law supports dismissal of plaintiff's claims as barred by Heck.

In light of plaintiff's pro se status, an opportunity to amend generally would be recommended prior to outright dismissal. However, in this instance, Heck bars any of these claims unless or until the invalidation of plaintiff's sentence. Based on what the undersigned can gather from plaintiff's complaint, this has yet to happen; therefore, amendment is futile and unnecessary. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to re-plead would be futile where the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"). Although the undersigned does not recommend that plaintiff be given an opportunity to amend his complaint in connection with this proceeding, it is recommended that the dismissal be without prejudice, "because the suit may be reinstated should plaintiff's conviction be expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " Amaker, 179 F.3d at 52 (quoting Heck, 512 U.S. at 487).

### III. Conclusion

**\*4 WHEREFORE**, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (Dkt. No. 2) is granted; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED in its entirety, without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 26 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is

**ORDERED**, that the Clerk of the Court serve plaintiff a copy of this Report-Recommendation and Order in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); F ED. R. CIV. P. 72 & 6(a).

**IT IS SO ORDERED.**

Dated: August 25, 2016.

**All Citations**

Slip Copy, 2016 WL 5793201

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3637409
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David LOYD, Plaintiff,
v.
Andrew M. CUOMO et al., Defendants.

No. 8:14–cv–829 (GLS/CFH).
|
Signed June 10, 2015.

**Attorneys and Law Firms**

David Loyd, Ellenville, NY, pro se.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

*1 Plaintiff *pro se* David Loyd commenced this action against defendants Andrew M. Cuomo, George E. Pataki, Anthony J. Annucci, and Tina M. Stanford pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1.) Loyd's complaint alleges that the imposition of post-release supervision (PRS) and the holding of his parole hearing in his absence violated his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (*Id.* at 6– 15.) Loyd seeks declaratory and injunctive relief, as well as damages in the amount of $100,000,000. (*Id.* at 16.)

In a Report–Recommendation and Order (R & R) dated August 8, 2014, Magistrate Judge Christian F. Hummel, upon an initial review of Loyd's complaint pursuant to 28 U.S.C. § 1915(e), recommended that Loyd's complaint be dismissed without leave to amend. (Dkt. No. 7.) Pending are Loyd's objections to the R & R. (Dkt. No. 8.) For the reasons that follow, the R & R is adopted in its entirety.

### II. *Background*

In September 2004, pursuant to a plea, Loyd was sentenced to three years to life on one count of criminal sale of a controlled substance in the second degree, and seven years to life on another count of the same crime to run concurrently. (Compl. at 6.) Loyd's conviction was subsequently affirmed by the Appellate Division, Third Judicial Department. (*Id.*) Sometime in 2005, drug reform laws were passed, and, in September 2008, Loyd was resentenced to two concurrent terms of seven years imprisonment, and five years of PRS. (*Id.;* Dkt. No. 1, Attach. 1 at 32–33.) Accordingly, the New York State Department of Corrections and Community Supervision calculated that May 31, 2011 was the new maximum expiration date of Loyd's sentence and indicated that Loyd was to serve a five-year period of PRS. (Compl. at 6; Dkt. No. 1, Attach. 1 at 34.)

On March 23, 2010, a parole hearing was conducted in Loyd's absence. (Compl. at 7.) At the hearing, Loyd "was subject to [five] years of PRS and PRS conditions and special conditions were imposed by the Parole Board Commissioners." (*Id.*) After the hearing, Loyd was sent a copy of the Parole Board Release Decision Notice, which failed to indicate any term of PRS. (*Id.*) Shortly thereafter, Loyd was released from prison. (*Id.*) The Certificate of Release indicated five years of PRS. (*Id.* at 7–8; Dkt. No. 1, Attach. 1 at 35.)

In August 2011, a parole warrant was issued, charging Loyd with various PRS violations. (Compl. at 10.) Subsequent to his guilty plea for supervised release violations, Loyd was sent to a drug treatment program. (*Id.* at 11.) Loyd was released on March 13, 2012 to serve the remainder of his PRS. (*Id.*) In November 2012, a second parole warrant was issued, and Loyd was taken into custody and released on March 8, 2013. (*Id.*) Finally, in November 2013, a third parole warrant was issued. (*Id.*) Loyd was again found guilty of supervised release violations and a twelve-month sentence was imposed. (*Id.*) Loyd's new PRS maximum expiration date is July 30, 2016. (*Id.* at 14.)

*2 Beginning in March 2014, Loyd filed four petitions for habeas corpus. (*Id.* at 11–13.) Loyd's complaint indicates that one such petition was dismissed, while the others remain pending. (*Id* . at 12–14.)

### III. *Standard of Review*

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N. Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4–5.

### IV. *Discussion*

Loyd's complaint alleges that his constitutional rights were violated when a term of PRS was administratively imposed and his parole hearing was held in his absence. (*See generally* Compl.) In the R & R, Judge Hummel recommended dismissal of Loyd's claims arising from the imposition of his PRS, and the parole warrants and further incarcerations that stemmed from it, based on the doctrine espoused in *Heck v. Humphrey,* 512 U.S. 477 (1994). (Dkt. No. 7 at 4–5.) Further, Judge Hummel recommended that, because Loyd did not have a due process liberty interest in his parole, he cannot state a due process claim based on his absence from his parole hearing. (*Id.* at 5–6.) Loyd's objections to Judge Hummel's R & R are difficult to decipher and largely repeat the allegations contained in his complaint. (*See generally* Dkt. No. 8.) As far as the court can discern, Loyd's only specific objections to the R & R are that: 1) because he is seeking injunctive relief, *Heck* does not apply here; and 2) although he did not have a due process interest in parole, he "ha[d] a constitutional right to be present at a hearing when punishment[, in the from of PRS, was] being inflicted upon him." (*Id.* at 5–6.) As the court construes these as specific objections, *de novo* review is triggered as to these arguments. *See Almonte,* 2006 WL 149049, at *3, *5. The remainder of Loyd's objections are general, and merit only clear error review. *Id.* at *4–5.

### A. *Imposition of PRS*

In *Heck,* the Supreme Court held that a state prisoner's claim for damages under 42 U.S.C. § 1983 is precluded

if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" absent proof that the inmate has already secured invalidation of that conviction or sentence. 512 U.S. at 487. Loyd argues that, as he is seeking injunctive and declaratory relief [1] in addition to compensatory and punitive damages, *Heck* does not apply to bar his complaint. (Dkt. No. 8 at 5.) However, the Supreme Court has explained that the *Heck* rule applies "no matter the relief sought (damages or equitable relief)." *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005); *see Caswell v. Green,* 424 F. App'x 44, 45 (2d Cir.2011). "[T]he governing standard for application of [*Heck* ] ... is whether a prisoner's victory in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence." *Caswell,* 424 F. App'x at 45 (internal quotation marks and citation omitted). Here, Loyd's challenge would necessarily call into question the validity of his sentence. *See Price v. Goord,* No. 9:10–CV–00181, 2011 WL 1630727, at *5 (N.D.N.Y. Mar. 10, 2011) ("PRS is a part of a prisoner's sentence and [t]he fact that [the] term was added administratively, rather than judicially, does not render it a separate component from plaintiff's sentence and thus beyond the reach of *Heck.*" (internal quotation marks and citation omitted)). Thus, all of Loyd's claims relating to the imposition of his period of PRS are barred because he has failed to show that his sentence has been invalidated.

[1]     Loyd seeks "an order declaring that [PRS] is [u]nconstitutional," as well as "an injunction ... order[ing] the defendants to stop and eliminate PRS." (Compl. at 16.)

**\*3** Judge Hummel also recommended that Loyd's claim arising out of his absence from his parole hearing be denied, because he does not have a due process interest in parole. (Dkt. No. 7 at 6.) In his objections, Loyd makes clear that he was not asserting a due process interest in parole, but, rather, a due process interest in his sentence. (Dkt. No. 8 at 6.) In other words, Loyd is arguing that his absence from a hearing when PRS was imposed violated his due process rights. (*Id.*) However, like all of Loyd's claims with respect to the imposition of his PRS, this due process claim is barred by *Heck. See Price,* 2011 WL 1630727, at *5 (concluding that a plaintiff's 1983 cause of action for the violation of his due process rights by the administrative addition of PRS to his sentence accrues when the sentence has been invalidated); *Albergottie v. New York City,* No. 08 Civ. 8331, 2011 WL 519296, at *1, *4 (S.D.N.Y. Feb. 15, 2011) (holding that a plaintiff's

§ 1983 claim "that the imposition of PRS by anyone other than a judge violates the Due Process Clause of the Fourteenth Amendment" accrues when the underlying sentence is invalidated or the plaintiff's petition for writ of habeas corpus is granted).

### B. *Remaining Findings*

As to the remaining portions of the R & R, the court has reviewed them for clear error and found none. Therefore, for the reasons articulated in the R & R, this court adopts Judge Hummel's recommendations, and dismisses Loyd's complaint.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Christian F. Hummel's August 8, 2014 Report–Recommendation and Order (Dkt. No. 7) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Loyd's complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION AND ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights complaint brought by *pro se* plaintiff David Loyd ("Loyd") pursuant to 42 U.S.C. § 1983. Compl. (Dkt. No. 1). Loyd has not paid the filing fee and instead seeks permission to proceed with this matter in *forma pauperis* ("IFP"). Dkt. No. 5.

### I. DISCUSSION

### A. Application to Proceed IFP

Loyd has submitted an IFP Application. After reviewing the entire file, the Court finds that plaintiff's financial status qualifies him to file this action without prepaying in full the $350 .00 filing fee. Although plaintiff is financially eligible to proceed IFP, he must still pay the partial filing fee as stated in 28 U.S.C. § 1915(b)(1). Plaintiff has filed the appropriate authorization form. Dkt. No. 3. Plaintiff's request to proceed IFP in this action is therefore granted.

### B. Allegations Contained in the Complaint

**\*4** Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

Loyd brings this action pursuant to 42 U.S.C. § 1983. An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right [ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983; *see also German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) ("*Section 1983* establishes a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States .") (quotations omitted).

Loyd outlines a complex criminal history in his complaint. On September 16, 2004, pursuant to a plea, Loyd was sentenced in Sullivan County to a three to life and a seven to life sentence to run concurrently. Compl. at 6; Dkt. No. 1–1 at 32–33. In 2005 the drug reform laws took affect. Compl. at 6. In 2006, Loyd's conviction, which he had previously appealed, was affirmed by the New York State Appellate Division, Third Department. *Id.* On September 4, 2008, Loyd was resentenced to two, seven year determinate terms to run concurrently and a term of

five years post release supervision ("PRS"). *Id.;* Dkt. No. 1–1 at 32–33.

On October 4, 2008, the New York State Department of Corrections and Community Supervision ("DOCCS") (formerly the New York State Department of Corrections) calculated a new maximum expiration date of Loyd's sentence to be May 31, 2011. Compl. at 6. DOCCS also indicated that Loyd was to serve a five year period of PRS. *Id.* On March 23, 2010, Loyd's parole hearing was conducted in his absence. *Id.* at 7. Loyd was to be subjected to five years of PRS, including special conditions; however, the Release Decision Notice did not indicate anything about PRS. *Id.* Instead it only outlined that Loyd's conditional release date was May 31, 2010 and his maximum expiration date was May 31, 2011. *Id.* On May 18, 2010, Loyd was transferred to Mohawk Correctional Facility whereupon he was released a few days later. Compl. at 7; Dkt. No. 1–1 at 35. The Certificate of Release indicated five years of PRS. Compl. at 7; Dkt. No. 1–1 at 35.

On August 11, 2011, the first of three parole warrants were issued against Loyd. Compl. at 10; Dkt. No. 1–1 at 36–37. The warrant was executed, Loyd pled guilty to the supervised release violations, and was sent to a drug treatment program. Compl. at 10–11. Loyd was released on March 13, 2012 to serve out the remainder of his PRS. Compl. at 11. The second parole warrant was issued on November 19, 2012, Loyd was taken into custody and released on March 8, 2013. *Id.* The third parole warrant was issued November 6, 2013, Loyd was taken into custody at Sullivan County Jail, and a twelve month sentence was imposed. *Id.*

**\*5** Loyd has since filed four petitions for habeas corpus. Compl. at 12. The last petition specifically challenges the validity of his PRS and confinement. *Id.* It appears that outside of one petition being dismissed for procedural reasons, none of the others have reached a disposition as of the time of filing the instant complaint. *Id.* at 13–14. Loyd remains in Altona Correctional Facility for his PRS violation, with a release date of November 6, 2014 and a maximum expiration date for his PRS of July 30, 2016. *Id.* at 14. For a complete statement of plaintiff's claims, reference is made to the complaint.

### 1. Imposition of PRS and Subsequent Parole Warrants and Incarcerations

Loyd contends that the imposition of his PRS was unconstitutional for a variety of reasons. He alleges that PRS violates the Double Jeopardy Clause. He also contends that his PRS produced three unconstitutional parole warrants and further incarcerations.

The Supreme Court has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). Loyd's claims regarding the imposition of PRS and anything which stemmed from it represent challenges that fall squarely within the ambit of *Heck,* as such supervision was a term included in Loyd's sentence. Accordingly, were Loyd to succeed on any theory espoused above, he would necessarily call into question the validity of his sentence. As such, all of these claims are barred because he has failed to show that the sentence has been overturned. *See Duamutef v. Morris,* 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned). Accordingly, such claims would be barred under *Heck* and dismissal pursuant to 28 U.S.C. § 1915(e) (2)(B)(i) and (ii) is recommended as Loyd's complaint lacks an arguable basis in law.

Case 5:16-cv-01419-DNH-TWD    Document 13    Filed 01/06/17    Page 32 of 32

In light of Loyd's *pro se* status, an opportunity to amend would generally be recommended prior to outright dismissal. However, in this instance, *Heck* bars any claims unless or until the invalidation of Loyd's sentence. This has yet to happen; therefore, amendment is futile and unnecessary. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

### 2. Parole Hearing

**\*6** Loyd also contends that his parole hearing was conducted in his absence, which was unconstitutional. The Supreme Court has held that

> while there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, a state's authority scheme, if it uses mandatory language, creates a presumption that parole release will be granted when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest.

*Robles v. Dennison,* 745 F.Supp.2d 244, 263 (W.D.N.Y.2010) (citing *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex,* 442 U.S. 1, 7 (1979); *Bd. of Pardons v. Allen,* 482 U.S. 369, 371 (1987)). The Second Circuit has determined that because New York's parole scheme delegates discretion to the Parole Board in granting an inmate parole, that scheme does not create a due process liberty interest in parole. *Barna v. Travis,* 239 F.3d 169, 170–71 (2d Cir.2001) (citing *Greenholtz,* 442 U.S. at 11–13)). Because Loyd has no liberty interest in his parole, he cannot state a due process claim. Accordingly,

allowing amendment of this claim would also be futile. *See Cuoco,* 222 F.3d at 112.

### II. Conclusion

**WHEREFORE,** it is hereby

**ORDERED,** that Loyd's motion to proceed *In Forma Pauperis* (Dkt. No. 5) is **GRANTED;** [1] and it is further

> [1]  Plaintiff should note that although his *in Forma Pauperis* Application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED,** that pursuant to the Court's review under 28 U.S.C. § 1915, Loyd's complaint be dismissed as barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994) and failure to state a claim; and it is further

**ORDERED** that the Clerk serve a copy of this Report–Recommendation and Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### IT IS SO ORDERED.

Filed Aug. 8, 2014.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 3637409

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.